# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **1:20-CR-512-1** |
| | : | |
| **BRADLEY REIFLER,** | : | |
| | : | |
| **Defendant.** | : | |

## UNITED STATES' OPPOSITION TO DEFENDANT'S MOTIONS FOR IDENTIFICATION OF BRADY MATERIAL AND FOR MATERIALS THE GOVERNMENT KNOWS IT WILL USE AND NOT USE AT TRIAL

The United States respectfully submits this consolidated opposition to the defendant Bradley Reifler's motion for identification of Brady material (Docket Entry ("D.E.") 32), and to the defendant's motion for identification of materials the government knows it will use and not use at trial (D.E. 35) (collectively, "motions"). For the reasons below, both motions should be denied.

## INTRODUCTION

On April 7, 2021, two days after the defendant was arraigned, the prosecution team sent the defendant its first discovery production, comprising nearly all of the materials it has produced to date. The discovery was produced so that, when technically feasible, the materials were searchable and accessible to the defendant in the same way that it is

searchable to the government. The production included a detailed discovery index which organizes the material by source, summarizes with specificity the contents, and provides a range of Bates numbers for each category. Through its filter team, the government has worked with the defendant under this Court's Filter Protocol Order to identify potentially privileged materials located on his own electronic devices that he himself produced to the government. And, on July 15, 2021, in conversations about resolving the matter, the government offered to reverse proffer the defendant,[1] which he declined. In short, throughout this case, the government has taken significant steps to ensure that the defendant promptly received and understands the discovery so that he is adequately prepared for trial.

In his motions, the defendant insinuates that the government has suppressed Brady material by producing too much. D.E. 32 at 5 (suggesting "a needle in the haystack approach"). That is false. And a fair review of the relevant, undisputed facts shows that the defendant has no basis, legally or otherwise, for the expansive relief he requests, which is for the government to comb through the discovery that it has already produced, "identify any and

---

[1] Although the form of a reverse proffer will vary depending on the circumstances, it is the undersigned's typical practice to: (1) explain the government's theory of the case; (2) present specific, powerful evidence incriminating the defendant; (3) summarize the government's expected proof at trial; (4) counter any anticipated defenses; and (5) discuss potential sentencing outcomes.

all exculpatory information that is known (or should be known to) any member of the prosecution team" (D.E. 32 at 1), and to "identify any materials . . . that it knows it will use and to separately identify the materials it knows it will not use in its case-in-chief" (D.E. 35 at 2). These requests should be denied.

*First*, every court of appeals to have considered a request for the government to identify Brady in discovery already disclosed—including the Fourth Circuit, albeit in an unpublished decision—has squarely rejected it. These cases, which the defendant does not cite, remind that the touchstone of a *Brady* analysis is whether the government has "suppressed" exculpatory material. *See, e.g.*, *United States v. Yi*, 791 Fed. Appx. 437, 438 (4th Cir. 2020) (unpublished). Thus, even in cases with voluminous discovery, when the government produces the discovery in a well-organized and searchable fashion, as it has done here, it is not "obligated to sift fastidiously" through it or "direct a defendant to exculpatory evidence" within it. *United States v. Gray*, 648 F.3d 562, 567 (7th Cir. 2011) (quotations omitted).

*Second*, neither the Rules nor Fourth Circuit precedent support the defendant's demand that the government scour material it has already produced and identify materials it intends to use, and not use, in its case-in-chief. At its core, this is a request for the government's entire exhibit list nearly four months before trial, and it is unfounded and unreasonable.

3

Therefore, the motions should be denied.

## RELEVANT BACKGROUND

On December 1, 2020, the grand jury returned a five count indictment charging wire fraud and perjury. At the request of the defendant, his arraignment was delayed until April to allow the parties sufficient time to explore a resolution. After those efforts failed, on April 5, 2021, the defendant was arraigned. On April 7, 2021, the prosecution team made its first discovery production. Ex. A, Cover Letter, April 7, 2021 (enclosing Discovery Index and Addendum).

The prosecution's team first discovery production contained approximately 1.9 million pages of material,[2] nearly all of which was produced in a load-ready and text-searchable format. The production included, among other things, materials received from government agencies, including the Securities and Exchange Commission ("SEC"); items received in response to grand jury subpoenas; records from an iPhone voluntarily produced by one of the defendant's employees; and twenty-three witness interview reports. To the extent that material was not searchable and

---

[2] The government originally planned to break up the volume of materials and produce in several stages. *See* Ex. A at 6-9 (column titled "Production No." identifying 6 separate productions). But because of the delay in arraignment, the government opted to produce everything at the same time, as soon as possible.

4

produced in native form, the prosecution team identified those documents. Ex. A at 4. In fact, the prosecution team alerted the defense that certain files contained viruses; it identified the Bates ranges for those files and explained that although the natives were unavailable, the text and images remained. *Id.* at 10. Additionally, the prosecution team identified certain electronic devices that it could not access. *Id.* at 3.

Additionally, the government—to assist the defendant with his efficient review of discovery—included approximately 38 metadata fields and provided the defendant a four-page index. Ex. A. at 3-4, 6. The index described in detail the different sets of materials, the producing party, and the corresponding Bates ranges. For example, if the defendant sought to identify documents that were produced by a particular bank, he simply needed to scan one column of the index, identify the correct producing party, and search the corresponding Bates ranges. In sum, although the government's first discovery production was voluminous, it was also well-organized, easy to search, and included an index that facilitated review. Since then, the prosecution team has produced four interview reports upon receipt from the agent, search warrant affidavits when unsealed by the court, and a single document produced by the SEC. Ex. B (discovery index for subsequent production).

As to potentially privileged materials, the filter team, upon information

5

and belief, was prepared to produce all materials obtained from the defendant back to the defendant at the time of arraignment. But the defendant objected to the government's use of the filter team. Thus, at the defendant's request, the government suspended all discovery efforts on the filter side on April 5, 2021. After extensive discussions between the parties, on May 17, 2021, the parties moved for entry of an order governing materials subject to privilege claims. D.E. 14. After subsequent briefing and a hearing, the Court—with the consent and encouragement of both parties—entered the Filter Protocol Order on June 2, 2021. Upon information and belief, the filter team and the defendant have since been cooperating under the terms of the Order. On June 11, 2021, in a Joint Status Report, the defendant agreed that there were "no outstanding discovery or privilege issues currently in dispute" and "confirm[ed] that the case is on track to be resolved according to the Court's Scheduling Order." D.E. 22 at 1.

## ARGUMENT

The defendant's motions raise two issues. First, the defendant asks the Court to order the government to search discovery material that it has already produced and identify items that might be relevant to both known and unknown defense theories. Second, the defendant asks the Court to order the government to disclose what it intends and what it does not intend to offer in its case-in-chief. The Court should deny both requests.

6

# I. THE GOVERNMENT IS NOT REQUIRED TO IDENTIFY BRADY IN MATERIALS IT HAS ALREADY DISCLOSED

To establish a Brady violation, a criminal defendant must show that the government knew about and failed to disclose exculpatory evidence to the defense. *Yi*, 791 F. App'x at 438. As the Fourth Circuit has long held, "[n]o due process violation occurs as long as *Brady* material is disclosed to a defendant in time for its effective use at trial." *United States v. Smith Grading & Paving, Inc.*, 760 F.2d 527, 532 (4th Cir. 1985). Thus, "[t]here is no *Brady* violation if . . . the defense already possesses the evidence." *United States v. Higgs*, 663 F.3d 726, 735 (4th Cir. 2011).

Here, the government's practice has been one of *disclosure*, not suppression. As outlined above, the prosecution team has produced nearly all discovery in a text-searchable format with accompanying indices. Consistent with this District's "open file" policy (*see* LCrR16.2), it produced summaries of interviews with potential witnesses eight months out from trial. Many of those summaries attach the documents that were discussed during the interview, or, in the alternative, identify the document by Bates, by date, by identifying the participants in the communication, or by some like combination. It also produced the transcripts of testimony from parallel proceedings and a transcript (procured by the government) of a recording of the defendant. The government has even offered a reverse proffer.

7

Thus, with the exception of two transcripts of witness testimony before the grand jury (which the government will disclose, if necessary, closer to trial and consistent with District practice), the defendant has what the prosecution team has, and in the format the prosecution team has it. As to the filter materials, both parties, upon information and belief, have been proceeding under this Court's Filter Protocol Order. Thus, where, as here, the government has already turned over the material, it has "fulfilled its obligations under *Brady*." *United States v. Lopez*, 860 F.3d 201, 217 n.6 (4th Cir.), *cert. denied*, 138 S. Ct. 409 (2017).

Nonetheless, the defendant argues that the government must scour the very materials that have been in the defendant's possession since arraignment (and perhaps earlier, given the parallel, civil proceedings). In an unpublished decision, the Fourth Circuit considered—and rejected—this exact request. *Yi*, 791 Fed. Appx. at 438. That is because the Fourth Circuit, in published opinions, has made clear that "the Government need only *disclose* exculpatory evidence, not ensure that the defense further develop and utilize that evidence." *United States v. King*, 628 F.3d 693, 702 (4th Cir. 2011). Thus, binding, Fourth Circuit precedent forecloses the requested relief, and every other court of appeals to have considered the issue has rejected the exact same request the defendant makes here. Finally, the caselaw upon which the defendant relies is distinguishable. Therefore, the

8

defendant's motion should be denied.

## A. Every Court of Appeals That Has Considered This Issue Has Rejected the Defendant's Argument

Like the Fourth Circuit in *Yi*, every other court of appeals to have considered the defendant's request has rejected it. And for good reason:

> To charge prosecutors with knowledge of exculpatory evidence buried in the computer databases of institutions that collect and store vast amounts of digitized data would be an unreasonable extension of the *Brady* rule. The courts, rightly in our view, have refused to make it. The government is not "obliged to sift fastidiously" through millions of pages (whether paper or electronic). *United States v. Warshak*, 631 F.3d 266, 297 (6th Cir. 2010). It is "under no duty to direct a defendant to exculpatory evidence [of which it is unaware] within a larger mass of disclosed evidence." *United States v. Skilling*, 554 F.3d 529, 576 (5th Cir. 2009), vacated in part on other grounds, —— U.S. ——, 130 S. Ct. 2896, 177 L.Ed.2d 619 (2010); *cf. United States v. Joseph*, 996 F.2d 36, 37, 39–41 (3d Cir. 1993).

*Gray*, 648 F.3d at 567.

Two of the cases cited in *Gray* are apt illustrations of this widely accepted view. In *United States v. Skilling*, the defendant contended that the government's voluminous discovery "resulted in the effective concealment of a huge quantity of exculpatory evidence." 554 F.3d at 576. Just as the defendant suggests here, Skilling argued that the government "suppressed evidence in violation of *Brady*" because it "never directed Skilling to a single *Brady* document contained in the open file." *Id.* In rejecting Skilling's claim, the Fifth Circuit noted that "[a]s a general rule, the government is under no

9

duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence." *Id.* (citing cases).

Similarly, in *United States v. Warshak*, the Sixth Circuit rejected a defendant's argument that the government "shrugged off its obligations under *Brady* by simply handing over millions of pages of evidence and forcing the defense to find any exculpatory information contained therein." 631 F.3d at 297. Adopting the Fifth Circuit's reasoning in *Skilling*, the Sixth Circuit held that any argument that the government is "obliged to sift fastidiously through the evidence . . . in an attempt to locate anything favorable to the defense," comes up "empty." *Id.*

The Fifth and Sixth Circuits are not alone. *See Rhoades v. Henry*, 638 F.3d 1027, 1039 (9th Cir. 2011) ("Rhoades points to no authority requiring the prosecution to single out a particular segment of a videotape [produced in discovery], and we decline to impose one."); *United States v. Pelullo*, 399 F.3d 197, 212 (3d Cir. 2005) ("*Brady* and its progeny permit the government to make information within its control available for inspection by the defense, and impose no additional duty on the prosecution team members to ferret out any potentially defense-favorable information from materials that are so disclosed.").

And several district courts have followed their lead. *See, e.g.*, *United States v. Meek*, No. 1:19-cr-00378-JMS-MJD, 2021 U.S. Dist. LEXIS 52121,

*4-19 (S.D. Ind. Mar. 19, 2021) (denying same motion in complex, document-intensive fraud case); *United States v. Ellis*, No. 2:19-cr-693, 2020 WL 3962288, at *2 (D.N.J. July 13, 2020) (rejecting defendant's argument that government had "affirmative obligation to find exculpatory material" among disclosed discovery, and concluding the government "satisfied its disclosure obligation under *Brady* and has gone further than the requirements of [Rule 16]" by organizing the discovery, providing an index and Bates stamps, providing records in the same format as received from third parties, and "provid[ing], where possible, electronic records in a searchable format"); *United States v. Parks*, No. 18-CR-0251, 2019 WL 4979838, at *3 (N.D. Okla. Oct. 8, 2019) (denying motion to compel government to "identify potentially exculpatory evidence that is included in the discovery materials" because, "defendants have not shown that *Brady* or *Giglio* requires more than the production of potentially exculpatory evidence.").[3]

---

[3] *See also, e.g.*, *United States v. AU Optronics Corp.*, 09-cr-0110, 2011 WL 6778520 at *2 (N.D. Cal. 2011) (denying motion to compel government to identify *Brady* material within 37 million pages of documents produced in discovery); *United States v. Ohle*, S3:08-cr-1109, 2011 WL 651849 at *4 (S.D.N.Y. 2011) (reiterating that "as a general rule, the Government is under no duty to direct a defendant to exculpatory evidence within a larger mass of disclosed evidence") *aff'd*, 441 F. App'x 798 (2d Cir. 2011); *United States v. Rubin/Chambers*, 825 F. Supp. 2d 451, 454 (S.D.N.Y. 2011) ("[T]he Court finds that *Brady* and its progeny impose no obligation on the Government to organize for Defendants in the format they design material already provided to them.").

11

Of course, *Skilling*, *Warshak*, and other cases recognize a narrow exception to the general rule of not requiring the government to search already-produced discovery for *Brady* material in cases where there is evidence that, by producing a voluminous amount of discovery, the government "was acting in bad faith in performing its obligations under *Brady*." *Skilling*, 554 F.3d at 577; *see Warshak*, 631 F.3d at 297. Thus, those courts did not foreclose the possibility that a future defendant might be able to demonstrate a Brady violation if, for example, the government "'padded' an open file with pointless or superfluous information to frustrate a defendant's review," *Skilling*, 554 F.3d at 577, "larded its production with entirely irrelevant documents," *Warshak*, 631 F.3d at 297, or hid exculpatory material "in the open file with the hope that [the defendant] would never find it," *Skilling*, 554 F.3d at 577.

In his motion, the defendant does not allege "bad faith" by the government, let alone offer any evidence of it. That is because there are no such practices here. To the contrary, the government has endeavored to ensure the defendant has received discovery early and in a form that allows for efficient search and review, and acknowledges its commitment to doing so throughout the life of this case. Such conduct is reflective of the government's good faith approach to discovery and belies any suggestion of bad faith. *Warshak*, 631 F.3d at 298.

12

Therefore, because the defendant's request is counter to the overwhelming weight of authority, it should be denied.

**B.  The Cases Cited by the Defendant Are Distinguishable**

In his motion, the defendant primarily relies on three cases. *See* D.E. 32 at 3-5 (discussing *United States v. Saffarinia*, 424 F. Supp. 3d 46 (D.D.C. 2020); *United States v. Blankenship*, No. 5:14-CR-00244, 2015 WL 3687864 (S.D.W. Va. June 12, 2015); *United States v. Salyer*, No. CR. S-10-0061, 2010 WL 3036444 (E.D. Cal. Aug. 2, 2010)).  Those cases are distinguishable.

In *Blankenship* and *Sayler*, the discovery produced to the defense was in a format that was less-user friendly than it is here.  For example, the court in *Blankenship* distinguished *Skilling* on the ground that, in *Skilling*, the government took "additional steps" when producing discovery, including providing the material in electronic and searchable format accompanied by indices.  *Blankenship*, 2015 WL 3687864, at *6; *see also Salyer*, 2010 WL 3036444, at *3. As discussed above, when those additional steps are taken— as they were here—courts routinely deny defendants' requests for the government to sift through already-produced discovery.  *See Skilling*, 554 F.3d at 577 (finding that, by providing documents that were "electronic and searchable," and accompanied by indices and producing a set of "hot documents," the Government "did much more than drop several hundred million pages on [the defendant's] doorstep); *United States v. Weaver*, 992 F.

13

Supp. 2d 152, 156 (E.D.N.Y. 2014) (declining to follow *Salyer* where the government "provided detailed indices for all the materials it produced, the majority of which were provided in both PDF and 'load-ready' file format that could be easily searched"); *Rubin/Chambers*, 825 F. Supp. 2d at 456 (distinguishing *Salyer* on grounds that the Government had produced discovery in "electronic and searchable" format). Thus, neither *Blankenship* nor *Sayler* applies here.

The defendant's reliance on *Saffarinia* is similarly misplaced. There, the defendant's "counsel [was] handling this matter pro bono" with "time constraints" and "limited financial resources." 424 F. Supp. 3d at 88. Here, by contrast, the defendant is, by his own account, a sophisticated financial advisor who is represented by talented, experienced counsel from a well-known criminal defense firm in North Carolina. And, although they have not entered an appearance in the case, lawyers from K&L Gates, LLP, "one of the largest law firms in the world,"[4] continue to advise the defendant in his criminal case.

In fact, in conversations about resolving this matter without trial, lawyers for the defendant have proved more than capable in identifying material that, according to them, undercuts the government's theory of the

---

[4] https://www.klgates.com/places (last visited August 19, 2021)

case.  For example, as recently as August 5, government counsel met with the defense at the office of K&L Gates in D.C. in a good faith effort to further discuss resolution.  During the meeting, counsel walked the government through a voluminous Power Point presentation that purported to summarize emails and other documents that weighed in favor of a favorable resolution for the defendant.  (They do not).  This conversation followed a shorter, less fulsome discussion in July, and several calls amongst the parties *before discovery was produced*.  Indeed, unlike the defendant in *Saffarinia*, the defendant here, as he makes abundantly clear in his motions, has been involved with litigation regarding the underlying facts in this case since approximately 2016.

In sum, the charges here are not out of the blue and the defendant is not starting from scratch.  Through his lawyers, he has aggressively litigated this case, filing eleven, substantive pre-trial motions.  And while the government does not fault the defendant for doing so, he "cannot pursue such an aggressive defense strategy and simultaneously claim that [he has] very limited resources" to review discovery.  *United States v. Meek*, No. 1:19-cr-00378-JMS-MJD, 2021 U.S. Dist. LEXIS 52121, *18 (S.D. Ind. Mar. 19, 2021).  Therefore, *Saffarinia*, like *Blankenship* and *Sayler*, is distinguishable.  Accordingly, the defendant's motion should be denied.

15

## II. THE REQUEST FOR THE GOVERNMENT TO IMMEDIATELY IDENTIFY WHICH DOCUMENTS IT WILL OR WILL NOT USE IN ITS CASE-IN-CHIEF IS UNFOUNDED AND UNREASONABLE

In a separate motion, the defendant demands that the United States identify which materials in its discovery production it intends to use in its case-in-chief at trial and which it does not.  D.E. 35.  In essence, this is a request for the government to produce its entire exhibit list approximately four months before trial, which is unsupported by any of the relevant Rules or Fourth Circuit precedent and fails for many of the same reasons that the defendant's Brady argument fails.  Therefore, the defendant's motion should be denied.

To begin, nothing in Rule 16 requires disclosure of the government's final exhibit list months in advance of trial.

> Upon a defendant's request, the government must permit the defendant to inspect and copy . . . papers, documents, data, . . . or copies or portions of any of these items, if the item is within the government's possession, custody, or control and (i) the item is material to preparing the defense; (ii) the government intends to use the item in its case-in-chief at trial; or (iii) the item was obtained from or belongs to the defendant.

Fed. R. Crim. P. 16(a)(1)(E).  This is a requirement of *production*, not identification, and the United States has already complied with the Rule's requirements through discovery.  *See* D.E. 22, Joint Status Report.

16

The Fourth Circuit has recognized that Rule 16 does not require the government to "disclose all the minutiae of its evidence" this far in advance of trial, either "to reveal its trial strategy" or "to delineate with total specificity the case it intends to present" at trial. *United States v. Jones*, 469 F. App'x 175, 180 (4th Cir. 2012) (quoting *United States v. Anderson*, 481 F.2d 685, 693 (4th Cir. 1973)). And that is particularly true where, as here, the defendant's motions are "overly broad in scope" and, taken together, amount to "a shotgun fishing expedition for evidence." *Anderson*, 481 F.2d at 694 (citations and quotations omitted).

Other courts have recognized that Rule 16 does not require the government to identify which items it will later designate as trial exhibits (or which it will not), so long as the materials are available in discovery. *See, e.g.*, *United States v. Prince*, 618 F.3d 551, 562 (6th Cir. 2010) ("Rule 16 does not entitle a defendant to pretrial disclosure of the government's exhibit list."); *United States v. Causey*, 356 F. Supp. 2d 681, 686-87 (S.D. Tex. 2005) (holding, in a case arising out of the Enron prosecution involving over 80 million pages of discoverable materials, that "[t]he plain language of Rule 16 does not require the government to specify from among the universe of discovery documents produced to defendants which documents it considers material to the defense or which documents it intends to use in its case-in-chief.").

17

Rule 12(b)(4)(B) likewise fails to support his requested relief. D.E. 35 at 3-4. It provides only that, "*in order to have an opportunity to move to suppress evidence under Rule 12(b)(3)(C),*" a defendant may "request notice of the government's intent to use (in its evidence-in-chief at trial), any evidence that the defendant may be entitled to discover under Rule 16." Fed. R. Crim. P. 12(b)(4)(B) (emphasis added). But as that plain language makes clear, the Rule exists only for the limited purpose of facilitating suppression motions. *See United States v. Lanier*, 578 F.2d 1246, 1254 (8th Cir. 1978) (concluding that the Rule "contemplates motions filed in preparation for actual or potential motions to suppress evidence," and does not otherwise provide "a means of obtaining more specific discovery than that afforded by Rule 16"). It does not authorize, at the Rule 12(b) stage, requests for identification of every document the government will (or will not) ultimately mark as a trial exhibit. *See, e.g.*, *United States v. Brown*, No. GJH-18-0335, 2020 WL 6393392, at *4 (D. Md. Nov. 2, 2020) ("[D]efendants cannot invoke Rule 12(b)(4)(B) 'to force the government to decide precisely which documents produced in discovery it will offer at trial and to prevent it from using any that it does not so designate as a matter of trial tactics.'" (quoting *United States v. El-Silimy*, 228 F.R.D. 52, 57 (D. Me. 2005)).

Indeed, other courts within the Fourth Circuit have recognized that Rule 12(b)(4)(B) requires the government only to "respond to a defendant's

18

request for notice whether the government intends to offer *specific* evidence that the request identifies." *United States v. Ishak*, 277 F.R.D. 156, 159 (E.D. Va. 2011) (emphasis in original); *see also Brown*, 2020 WL 6393392, at *4 ("[A]ny request under Rule 12(b)(4)(B) must identify evidence with sufficient specificity that the government can readily ascertain the particular evidence referenced, as only then can the government effectively provide notice whether it intends to offer that particular evidence in its case-in-chief." (internal citations and quotation marks omitted)).  The defendant has already filed a motion to suppress,[5] and he has not identified any other categories of the Rule 16 discovery for which he may file another suppression motion. Thus, there is no request at this point that requires the government's response under Rule 12(b)(4)(B), and the Rule certainly does not require the United States to disclose its complete exhibit list this far in advance of trial.[6]

_____

[5] As to the motion to suppress (D.E. 31), the defendant's lawyers provided the government with a summary of the inventory by custodian.  *See* Ex. C at 2-7.

[6] For this reason, the defendant's reliance on the following authorities is misplaced: *United States v. de la Cruz-Paulino*, 61 F.3d 986, 993 (1st Cir. 1995), and *United States v. Cheatham*, 500 F. Supp. 2d 528, 534-35 (W.D. Pa. 2007), both cited at D.E. 35 at 4, and both which rested solely on the application of Rule 12(b)(4)(B) or its predecessor, Rule 12(d)(2).  In fact, in *de la Cruz-Paulino*, the First Circuit explicitly acknowledged that "Rule 12(d) [now Rule 12(b)(4)(B)] was not designed to aid the defendant in ascertaining the government's trial strategy, but only in effectively bringing suppression motions before trial, as required by Rule 12(b)(3)."  61 F.3d at 994.

The other authorities cited in defendant the defendant's motion are similarly unhelpful to him, as those cases are either distinguishable or out of step with precedent from within the Fourth Circuit. For example, the defendant relies heavily on *United States v. Anderson*, where a district court in the District of Columbia exercised its discretion to require the government to make an early identification of "what it intends to rely on in its case-in-chief at trial." 416 F. Supp. 2d 110, 115 (D.D.C. 2006). The defendant ignores, however, that the weight of authority among courts within the Fourth Circuit runs directly counter to *Anderson*. For example, *Ishak* explicitly rejected *Anderson*'s analysis, holding that *Anderson*'s view "is unpersuasive; it ignores the Rule's text, purpose, and proper relationship to Rule 16." 277 F.R.D. at 160 n.2. As *Ishak* correctly observed, "[t]he Rule does not exist to help defendants 'prepare a proper and effective defense' in so broad a sense." *Id.* at 160. And if Rule 12, Rule 16, or any other provision of the Federal Rules of Criminal Procedure had "contemplated a detailed exhibit list" months in advance of trial, it "could have stated so expressly." *Id.* at 160 n.2 (quoting *United States v. Lujan*, 530 F. Supp. 2d 1224, 1246 (D.N.M. 2008)). That requirement appears nowhere in the Rules.[7]

---

[7] *See also United States v. Bartko*, No. 5:09-cr-321, 2021 WL 3984603, at *3 (E.D.N.C. Oct. 8, 2010) ("Bartko has failed to demonstrate a particularized reason for [such] disclosure well in advance of trial."); *see also, e.g.*, *United States v. Valerio*, 737 F. Supp. 844, 847 (S.D.N.Y. 1990) ("The

Further, this case is distinguishable from the few cases cited by the defendant where early disclosures of the government's trial exhibits (or other information on which the government intended to rely on at trial) were ordered pursuant to Rule 16. For example, *United States v. Upton*, 856 F. Supp. 727 (E.D.N.Y. 1994), involved 13 defendants charged in a 29-count indictment, where the indictment did not specify the particular transactions through which the defendants perpetrated the charged scheme to falsify airline maintenance records. Under those specific circumstances, the district court found early identification of the government's trial evidence warranted because the defendants otherwise lacked sufficient notice as to what documents "the government will contend were falsified in furtherance of the scheme outlined" in the indictment. *Id.* at 748; *see also id.* at 753. Similarly, in *United States v. Morad*, the district court granted a limited request by one of the charged defendants in a multi-defendant case for a "list and description of each Medicare beneficiary that the government maintains forms the basis of a fraudulent claim to Medicare." Crim. No. 13-101, 2013 WL 12208145, at

---

defendants' request for an exhibit list should similarly be denied. The defendants are only entitled to that discovery required by Rule 16(a)(1)(C) of the Federal Rules of Criminal Procedures, and this request falls outside the scope of that rule."); *United States v. Fischbach & Moore, Inc.*, 576 F. Supp. 1384, 1391 (W.D. Pa. 1983) (holding that Rule 16 did not require the government to designate for defendants, who were indicted on bid-rigging charges, which of the documents it had produced that were intended for later introduction during its case-in-chief at trial).

Case 1:20-cr-00512-CCE   Document 44   Filed 08/20/21   Page 21 of 26

*3 (E.D. La. Dec. 10, 2013). Here, however, no such remedy is warranted, given that this case involves only a single defendant charged with five straightforward counts. *See* D.E. 1.

*United States v. Poindexter*, 727 F. Supp. 1470 (D.D.C. 1989), is even further afield from the circumstances of this case. *Poindexter* was a complex national security case involving the Iran-Contra affair, where already thorny discovery issues were further complicated by the Classified Information Procedures Act and by disputes about the United States' responsibility to produce materials related to covert operations and documents created by the White House. *See id.* at 1471-81. Mindful of those very unique circumstances, the district court ordered the government to provide "greater specificity" with respect to some of the discoverable materials that it had produced, and specifically to notify the defendant of certain materials that it intended to use at trial. *Id.* at 1484. But the court also took pains to note that "[t]his notification will not prevent the government from later introducing other documents from these materials on a limited scale." *Id.* And notably, even the *Poindexter* court did *not* require the United States to do what the defendant demands here: that is, itemize every exhibit that the government intends to use in its case-in-chief months in advance of trial.

The defendant's request for the government to immediately identify the documents that it does *not* intend to introduce at trial is merely the flip side

22

of the same coin, and is equally unpersuasive. As explained above, the government has endeavored to provide discovery to the defense in an easily-searchable and efficient manner, and has engaged in good faith discussions where the defense has already identified several documents it views as favorable to its case. In fact, the defense has already filed a motion to suppress materials seized from searches of the electronic devices. And while the defense has not contacted the government about the exchange of exhibit lists for trial, the government is amenable to reasonable deadlines for such an exchange to allow both parties sufficient time to prepare their case.

Given these efforts, the defendant's requested remedy is unnecessary. And once again, the authorities cited by the defendant to support his request that the government immediately designate the documents that it will not introduce at trial four months from now are inapposite or distinguishable on their facts. *See, e.g.*, *United States v. Contech Engineered Solutions LLC*, No. 5:20-CR-481-FL-2, at *4-5 (E.D.N.C. Feb. 18, 2021) (granting a defendant's request for "negative identification" of documents on which the government did not intend to rely, where that identification was intended primarily to facilitate the defendant's filing of potential suppression motions under Rule 12(b)(4)(B), and where that "intermediate remedy" was adopted in lieu of requiring a complete exhibit list); *United States v. McCluskey*, Cr. No. 10-2734 JCH, 2012 WL 13076959, at *2 (D.N.M. July 9, 2012) (in a capital case,

23

similarly applying only Rule 12(b)(4)(B) and requiring a similar negative identification, while denying a defense request for "all evidence the Government intends to use in its case-in-chief," because "[t]he clear purpose of the Rule is to provide the Defendant with sufficient information to enable him to file only germane motions to suppress, but it is not intended to provide access to the Government's trial strategy"); *United States v. McDade*, No. CRIM. A. 92-249, 1992 WL 382351, at *1-2 (E.D. Pa. Dec. 11, 1992) (requiring the government to make such a good-faith negative identification where the Rule 16 discovery production included over 2,400 hours of recorded conversations, as well as multiple rooms of hard copy documents in filing cabinets, none of which (in contrast to the discovery here) was easily searchable, while simultaneously refusing to require the government to produce its trial exhibit list 3.5 months before trial); *see also United States v. Washington*, 819 F. Supp. 358, 369 (D. Vt. 1993) (stating only that "[s]hould the defendants demonstrate that a similar volume of material [as in *McDade*] exists in the case at bar, this Court *may* be inclined to fashion a similar order. Without such a specific showing, however, *I refuse to compel any such disclosure by the Government*." (emphasis added)).  In sum, the defendant's motion is an attempt to gain a tactical advantage through early disclosure of the government's trial evidence and strategy.  Therefore, the motion should be denied.

## CONCLUSION

The government has operated in good faith to ensure that the defendant has the materials he needs for trial and to preserve and respect his vigorous assertions of attorney-client privilege.  And to date, the government has received no complaints about the government's discovery efforts.  To be sure, discovery in this matter is voluminous.  And for this reason (and many others), the government will continue to work with the defendant to accommodate reasonable deadlines and requests.  But the defendant's suggestion that the government has somehow suppressed Brady material by hiding it in its discovery productions, or foreclosed his review of the evidence, are baseless and should be rejected.  Therefore, the United States respectfully requests that the Court deny the defendant's motions.

Respectfully submitted,                                    Dated:  August 20, 2021

JOSEPH BEEMSTERBOER
Acting Chief, Fraud Section
U.S. Department of Justice

*s/Thomas J. Tynan*
Thomas J. Tynan
Trial Attorney
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
Thomas.Tynan@usdoj.gov
(202) 768-1136
*Counsel for the Government*

25

## CERTIFICATE OF SERVICE

I hereby certify that on August 20, 2021, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

Respectfully submitted,

*s/Thomas J. Tynan*
Thomas J. Tynan
Trial Attorney