# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 1:20-CR-512-1 |
| | : | |
| BRADLEY C. REIFLER, | : | |
| | : | |
| Defendant. | : | |

## UNITED STATES' TRIAL BRIEF

The United States, through undersigned counsel, respectfully submits this trial brief for *United States v. Reifler*, which is scheduled for trial on Monday, February 14, 2022. Here, the government provides a background on the case and a summary of the evidence. Additionally, the government explains its position on certain evidentiary issues, including the introduction of the defendant's statements, the status of stipulations between the parties, the government's proposed summary exhibits and testimony, the defendant's failure to provide sufficient notice of expected expert testimony, the defendant's settlement in a parallel civil proceeding, and other evidentiary issues. Finally, the government includes its position on forfeiture.

## BACKGROUND AND EXPECTED EVIDENCE

The defendant is charged with four counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of perjury, in violation of 18 U.S.C. § 1621. Docket Entry ("D.E.") 1, Indictment.

The charges stem from the defendant's scheme to defraud North Carolina Mutual Life Insurance Company ("NCM"). The evidence at trial will show that, as the investment advisor to the reinsurance company for NCM, the defendant was responsible for investing assets of approximately $34 million according to guidelines contained in a trust agreement and investment advisor agreement. Rather than invest the assets as agreed—i.e., in secure investment vehicles—the defendant misappropriated the funds for the benefit of his own companies, and then used the funds for blatantly improper purposes, such as paying for overhead expenses and repaying prior investors to whom he owed money. The defendant diverted other funds to risky investment vehicles that did not comply with the investment guidelines. During internal and external audits performed in 2016, NCM requested supporting documentation for the defendant's investments. Rather than disclose the true nature of the investments that he had made, the defendant sent NCM fabricated documentation for deals with individuals and entities that did not exist.

During NCM's internal audit, NCM confronted the defendant with the issues underlying his "investments." In response, the defendant agreed to

pledge additional "collateral" to secure NCM's assets. In the emails that are the basis for Counts 1 and 2, the defendant caused purported pledge agreements to be sent to NCM. D.E. 1, Indictment at ¶ 46. But as the defendant knew at the time, those pledge agreements were fake and had not actually been signed by the counter-parties identified in the documents. When NCM sought to liquidate the assets, the defendant, in the emails that are the basis for Counts 3 and 4, denied that he was the investment advisor and blamed the owner of the reinsurance company for any issues regarding the "investment" of NCM's assets.

On September 23, 2016, NCM sued the defendant and others in an effort to recover its assets. Only three days before, the defendant sent a text message to his IT employee and said, "I would like all deletes to be permanently deleted." D.E. 1, Indictment at ¶ 38. And, in a sworn declaration that serves as the basis for Count 5, the defendant stated that "*all* of the NCM Funds were invested in debt instruments with varying maturity dates." *Id.* at ¶ 37 (emphasis added). That statement was blatantly false, as bank records incontrovertibly show that the defendant had used NCM funds to pay prior investors in and overhead expenses for his companies.

As the defendant's scheme continued to unravel in 2017, the defendant declared bankruptcy. *Id.* at ¶ 39. NCM intervened to oppose the discharge of his debts, and after the defendant was ordered to provide electronic discovery,

3

he attempted to and did destroy evidence of his scheme to defraud. *Id.* at ¶¶ 39-41. As a direct result of the crimes alleged in the indictment, NCM was ultimately placed in rehabilitation.

At trial, the government expects to call witnesses from NCM, the reinsurance company ("Port Royal"), and the defendant's company (generally, "Forefront"). Additionally, the government expects to call witnesses from the trustee for NCM's assets ("Summit Trust") and the purported counter-parties to agreements that the defendant fabricated during the scheme. Finally, the government expects to call a summary witness who will summarize the defendant's use of NCM funds (*see* D.E. 65), and a witness to describe the defendant's efforts to conceal his fraud by destroying relevant evidence during the bankruptcy proceeding (*see* D.E. 69).

## EXPECTED TRIAL ISSUES

### I. The Government Intends to Introduce Out-of-Court Statements by the Defendant

At trial, the government intends to introduce various out-of-court statements by the defendant. Specifically, the government intends to admit statements made by the defendant on a consensual recording. Additionally, in describing the scheme and the charged conduct, government witnesses will likely testify about out-of-court statements made by the defendant and his agents, and the government intends to admit documentary evidence, including

4

emails and text messages, containing the same.[1] All of these out-of-court statements should be admitted as non-hearsay under the Federal Rules of Evidence. *See* Federal Rules of Evidence 801(d)(2)(A),(D). In contrast, to the extent the defendant seeks to introduce his own out-of-court statements in support of his defense, such statements should be precluded as inadmissible hearsay.

A. **Consensual Recording**

In response to a grand jury subpoena, Real Estate Company 1 produced a consensual recording of a conversation that two of its owners had with the defendant on August 9, 2016.[2] During the conversation, the defendant made a number of admissions, including that he "did something very wrong in terms of that I sent money that I shouldn't have sent to [Real estate Company 1] so it's coming back to bite me in the ass in a number of ways" (D.E. 1 at ¶ 22), and that, "[w]ithout the million five that I illegally sent, we wouldn't be here," among others.[3]

---

[1] If necessary, the government is prepared to also offer statements made by the defendant under oath in depositions with the Securities and Exchange Commission and during the bankruptcy proceedings.

[2] One of the owners was in the room with the defendant; the other owner participated in the meeting by phone.

[3] The recording will be properly authenticated at trial, as the government intends to call the owner of Real Estate Company 1 who created the recording. Fed. R. Evid. 901(a). Further, the government has provided defense counsel

5

Admission of the recording is consistent with hearsay rules and the Confrontation Clause. When offered by the government, the recordings do not contain inadmissible hearsay, as the defendant's out-of-court statements are admissible non-hearsay under Rule 801(d)(2)(A). Consistent with this rule, a "defendant's statements in a tape recorded conversation constitute non-hearsay admissions of a party." *United States v. Alsop*, 12 F. App'x 253, 259 (6th Cir. 2001).

Further, the statements of the other participants on the recording may be admitted, at a minimum, to place the defendant's admissions in context. *See United States v. Anderson*, 1993 WL 515513, at *1 (4th Cir. 1993) ("The statements were not being offered to prove the truth of the matters asserted, but were only proffered to set the context for [the defendant's] responses."). Relatedly, the statements of others on the recording do not run afoul of the defendant's Confrontation Clause rights where the statements are used for purposes other than establishing the truth of the matter asserted (e.g., to provide context for the defendant's admissions). *Tennessee v. Street*, 471 U.S. 490, 413-15 (1985).

---

with a transcript of the recording to reach agreement on its accuracy. Under these circumstances, the jury should be permitted to use the transcript during deliberations, even though it is not in evidence. *See* D.E. 79, Request No. 9, 20 (requested jury instruction for recording and transcript).

B.  **Other Statements by the Defendant**

As explained above, the government intends to elicit statements made by the defendant and his agents through witnesses and documents. Like the defendant's statements on the recording, these statements are admissible as non-hearsay under Rules 801(d)(2)(A),(D).

C.  **Self-Serving Statements Offered by the Defendant**

The defendant may not introduce his own statements through the testimony of other witnesses. Such statements are hearsay, and do not fall within the party-opponent exception to the hearsay rule. Further, preventing a defendant from eliciting his own hearsay statements on cross-examination is consistent with his Confrontation Clause rights. *United States v. Black*, 2014 WL 5783067, at *3 (E.D.N.Y. Nov. 5, 2014) ("It appears that every court to address this issue has held that a court may preclude a defendant's elicitation of his own otherwise inadmissible statements without violating the Sixth Amendment.").

Finally, the rule of completeness does not permit the admission of otherwise inadmissible evidence; therefore, to introduce portions of the recording or other statements by the defendant beyond those offered by the government, the defendant must show that those statements are not inadmissible hearsay. *United States v. Hassan*, 742 F.3d 104, 134 (4th Cir. 2014) ("Nevertheless, the rule of completeness does not render admissible . . .

7

evidence which is otherwise inadmissible under the hearsay rules. Nor does the rule of completeness require the admission of self-serving, exculpatory statements made by a party which are being sought for admission by that same party.") (cleaned up).

## II. Stipulations

Considering the volume of document evidence in this case, the government has attempted to engage the defense to ascertain whether it intends to object to any of the government's exhibits on authenticity or foundational grounds, and to generally assess whether there are any outstanding evidentiary disputes. To date, the government has not received a response. Accordingly, the government continues to prepare for trial without notice of any objections to its exhibits on authenticity or foundational grounds.

## III. Summary Testimony & Exhibits

On November 23, 2021, the government gave notice that it may call Patrick Fallon, CPA, CFE, an Associate Managing Director and Global Head of Investigations at Exiger, LLC. D.E. 65. To assist the jury, Mr. Fallon will summarize the voluminous contents of certain admissible documents. This includes summaries of bank records and business records of various payments to the defendant and his related entities, as well as the uses of those funds by the defendant and his related entities. The government does not consider this line of testimony to constitute expert testimony under Federal Rule of Evidence

702, but nonetheless disclosed this testimony in an abundance of caution.

On January 25, 2022, the government provided the defense a draft of twelve summary exhibits that it intends to introduce through Mr. Fallon. The underlying records, which include bank and accounting records, were produced in discovery. The government has also produced Federal Rule of Evidence 902(11) certifications for the underlying records, and has asked the defense to notify the government of any objections to the admissibility or authenticity of the records. To date, the defense has not provided the government notice of any objections.

Rule 1006 governs the admissibility of summary charts that summarize voluminous records. Under Rule 1006, summary charts constitute substantive evidence, and admissibility is not dependent on the admission in evidence of the underlying records. *United States v. Janati*, 374 F.3d 263, 272-73 (4th Cir. 2004). Indeed, summaries introduced under Rule 1006 are themselves evidence and are distinct from summaries used for demonstrative purposes. *Id*. Although the underlying documents upon which the summaries are based must themselves be admissible, they do not have to actually be received into evidence as a prerequisite for the admission of the summaries. *See id.*

The government will also likely use demonstrative exhibits at trial under Federal Rule of Evidence 611. Because the government intends to introduce charts and summaries under both Rule 611 and 1006, the government has

9

requested jury instructions for both types of materials to avoid confusion and ensure the jury treats each type of chart or summary properly. *See* D.E. 79, Request No. 7, ¶¶ 18-19.

## IV. Defense Expert

During a telephone conversation on January 12, defense counsel informed the government that he intends to introduce opinion testimony from Robert Nordlander, a former Special Agent with the Internal Revenue Service and certified public accountant, and to qualify Mr. Nordlander as an expert at trial. The government requested a summary of his testimony and opinions, as well as the bases for those opinions. The government also requested any summary exhibits that the defense intended to use at trial. To date, the government has not received a summary of Mr. Nordlander's opinions, testimony, or qualifications; nor has it received a copy of any summary exhibits.

Under Federal Rule of Criminal Procedure 16(b)(1)(C)(i), "the defendant must, at the government's request, give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703 or 705 of the Federal Rules of Evidence as evidence at trial." The written summary "must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications." If a party fails to comply with this rule, the Court may "prohibit that party from introducing the undisclosed evidence" or

10

"enter any other order that is just under the circumstances." Fed. R. Crim. Proc. 16(d)(2)(C). As the Advisory Committee Note states, Rule 16(b)(1)(C) is "intended to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination."

To date, the defendant has failed to comply with Rule 16(b)(1)(C). Other than the brief telephone conversation between the parties on January 12, the government has received no notice of the expected testimony from Mr. Nordlander. The defendant has failed to provide a summary of Mr. Nordlander's "opinions [or] the bases and reasons for those opinions," and has failed to disclose Mr. Nordlander's qualifications. In sum, the defendant has failed to comply with Rule 16(b)(1)(C).

To avoid unfair surprise and delay at trial, the Court should compel the defendant to immediately provide a summary of Mr. Nordlander's opinions and bases for those opinions and a disclosure of the purported expert's qualifications. In the event that the defendant fails to provide notice, Mr. Nordlander's expert testimony should be excluded.

**V.   Civil Settlement**

The government is aware that on March 3, 2017, the defendant entered into a civil settlement with NCM. *See NCM v. Stamford Brook Capital, LLC,*

11

*et al.*, Case No. 1:16-cv-01174, D.E. 52 (May 12, 2017) (Order granting stay pending outcome of settlement payments). At this time, the government does not intend to elicit testimony or present evidence regarding the defendant's settlement with NCM. The government, however, is providing notice of the settlement to the Court in the event that the defense opens the door to the settlement on cross examination. To the extent the defendant does so, the government should be permitted to ask questions about the settlement on redirect.

## VI. Other Evidentiary Issues

### A. Exception to Rule of Witness Sequestration

Federal Rule of Evidence 615 requires the Court to exclude witnesses from the courtroom until their testimony begins. Case agents, however, are allowed to remain in the courtroom under Rule 615(b), regardless of whether they testify. *See United States v. Ratfield*, 342 F. App'x 510, 513 (11th Cir. 2009) (allowing IRS agents to remain in the courtroom, even though one testified as a summary witness and another as both a fact and expert witness); *United States v. Jacobs*, 194 F. Supp. 3d 216, 220 (E.D.N.Y. 2016) (permitting IRS agent who would be testifying as "summary expert witness" to remain in courtroom during trial). Therefore, the government requests that the Court exempt from the sequestration order U.S. Postal Inspector Kevin Towers, the case agent in this matter.

12

## B. Improper Cross Examination or Argument at Trial

To limit the number of objections and disputes in front of the jury, the government sets forth its position on the following topics.

*1. The presence or absence of any particular person on the government's witness list or the government's plans or decision to call or not call a particular witness.*

For various reasons, the government may elect not to call every witness on its list. A witness might become unavailable or lack credibility. Or, in light of other evidence presented at trial, the witness's testimony may become cumulative. If the jury is informed that the government listed an individual on its witness list, and that person does not testify, the jury could become confused. Thus, the defendant should not discuss the contents of the government's witness list in front of the jury. Further, if the defendant intends to discuss or ask the jury to draw any negative inference from the government's decision not to call a witness (*see* D.E. 80, Def.'s Proposed Jury Instructions at 5 (instruction regarding "Absence of a Witness"), he must first show that the witness was "peculiarly within [the United States'] power to produce" and that "the testimony would elucidate issues important to the trial." *United States v. Green*, 69 Fed. Appx. 612, 614 (4th Cir. 2003) (citation omitted) (holding that because the contested witnesses could have been subpoenaed by the defendant, the defendant was "not entitled to argue to the jury that inferences adverse to the Government's case should be drawn from the prosecution's failure to call

13

any of [his] co-conspirators as trial witnesses").

        2.    *Whether the government has charged other persons.*

Except in the instance of a witness who testifies at trial, whether the government has charged another person in this case or others is irrelevant to the guilt or innocence of defendant. Accordingly, the defendant should be precluding from suggesting or arguing that individuals other than the defendant should have been charged or otherwise held responsible for the conduct alleged in the indictment.

        3.    *Proper use of interview reports at trial.*

The government has produced relevant interview reports and continues to do so, but there are no interview reports in this case that have been "adopted" by the witness such that they can be considered statements of the witness. Thus, the interview reports are statements of government agents summarizing the substance of the witness interview and are not Jencks material for the witnesses who were interviewed. *Palermo v. United States*, 360 U.S. 343, 352-53 (1959). Accordingly, the defense should be precluded from introducing the contents of the interview reports to impeach witnesses on the basis of inconsistent statements because the interview reports are not the statements of the witnesses themselves. The defense is, of course, free to ask a witness whether he or she made a statement that is reflected in an agent interview report. If the defense is not satisfied with the witness's answer,

14

however, the defense may not publish or introduce the contents of the interview report as a prior inconsistent statement. Moreover, defense counsel must not publish the contents of the interview reports to the jury, or otherwise suggest that the interview report is a statement of the witness.

## VII. Forfeiture

In the event the defendant is found guilty of one or more of the offenses set forth in Counts One through Four of the Indictment, the government will seek a money judgment in an amount representing the proceeds derived from the commission of such offense.

Generally, the forfeiture determination is made by the Court, not the jury. *See* Rule 32.2(b)(1)(A); *see also United States v. Poulin*, 461 Fed. Appx. 272, 287 n.6 (4th Cir. 2012) (per curiam) ("there is no constitutional right to a jury determination of forfeiture matters," citing *Libretti v. United States*, 516 U.S. 29, 49 (1995*);* the question is whether the court complied with Rule 32.2). A defendant has a limited statutory right to have the jury retained to determine the forfeiture of *specific assets*, Rule 32.2(b)(5), but there is no right to have the jury determine the amount of a *money judgment* that the defendant will be ordered to pay. *See United States v. Curbelo*, 726 F.3d 1260, 1277, 1278 n. 10 (11th Cir. 2013) (the right to a jury under Rule 32.2(b)(5) applies only to specific property, not to the amount of a money judgment; the rule does not infringe on defendant's Sixth Amendment rights because there is no right to a

15

jury under *Libretti*); *United States v. Phillips*, 704 F.3d 754, 771 (9th Cir. 2012) (there is no statutory right to a jury under Rule 32.2(b)(5) when the government is seeking only a money judgment); *United States v. Gregoire*, 638 F.3d 962, 972 (8th Cir. 2011) (same); *United States v. Tedder*, 403 F.3d 836, 841 (7th Cir. 2005) (same); *United States v. Jameel*, 2014 WL 5317860, *3 (E.D. Va. Oct. 16, 2014) (denying request for a jury where the government is seeking only a money judgment).

Accordingly, in this case, upon conviction of the defendant, the government will ask the court to enter a money judgment in an amount to be determined based on the evidence.

Respectfully submitted,                                Dated: January 31, 2022

JOSEPH BEEMSTERBOER
Acting Chief, Fraud Section
U.S. Department of Justice

      *s/*

Thomas J. Tynan
Michael P. McCarthy
Trial Attorneys
U.S. Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
Thomas.Tynan@usdoj.gov
(202) 768-1136 (Tynan)
Michael.McCarthy2@usdoj.gov
(202) 412-1514 (McCarthy)

*Counsel for the Government*

## CERTIFICATE OF SERVICE

I certify that on January 31, 2022, I electronically filed the foregoing document with the Clerk of Court using the ECF system, which will send notification of such filing to counsel of record.

<em>s/Thomas J. Tynan</em><br>Thomas J. Tynan